Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

_____ District of Nevada

_____ Division

| | |
|---|---|
| Takisha Brooks | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| (Write the full name of each plaintiff who is filing this complaint. | ) |
| If the names of all the plaintiffs cannot fit in the space above, | ) |
| please write "see attached" in the space and attach an additional | ) |
| page with the full list of names.) | ) |
| -v- | ) |
| Keolis Transit America Inc | ) |
| | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |
| (Write the full name of each defendant who is being sued. If the | ) |
| names of all the defendants cannot fit in the space above, please | ) |
| write "see attached" in the space and attach an additional page | ) |
| with the full list of names.) | ) |

FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 1 2 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ AMM DEPUTY

Case No._____

(to be filled in by the Clerk's Office)

Jury Trial: (check one)  ☑ Yes  ☐ No

2:26-cv-01449-APG-MDC

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Takisha Brooks |
| Street Address | 2671 Stones Creek Dr. |
| City and County | Atwater, Merced County |
| State and Zip Code | California, 95301 |
| Telephone Number | 279 207 0426 |
| E-mail Address | tdlb25p@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

    Name                        Keolis Transit America Inc

    Job or Title *(if known)*

    Street Address          6053 W. Century Blvd 9th Fl

    City and County        Los Angeles, Los Angeles County

    State and Zip Code     California. 90045

    Telephone Number     (617) 222 8001

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.      If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.      If the Basis for Jurisdiction Is Diversity of Citizenship

1.      The Plaintiff(s)

a.      If the plaintiff is an individual

The plaintiff, *(name)* Takisha Brooks , is a citizen of the State of *(name)* California .

b.      If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

a.      If the defendant is an individual

The defendant, *(name)* Keolis Transit America Inc , is a citizen of the State of *(name)* Nevada . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

      b.      If the defendant is a corporation

            The defendant, *(name)* _____ , is incorporated under

            the laws of the State of *(name)* _____ , and has its

            principal place of business in the State of *(name)* _____ .

            Or is incorporated under the laws of *(foreign nation)* _____ ,

            and has its principal place of business in *(name)* _____ .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

        see complaint attached

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

see complaint attached

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

see complaint attached

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        5/12/26

Signature of Plaintiff

Printed Name of Plaintiff        Takisha Brooks

### B.    For Attorneys

Date of signing:        _____

Signature of Attorney        _____

Printed Name of Attorney        _____

Bar Number        _____

Name of Law Firm        _____

Street Address        _____

State and Zip Code        _____

Telephone Number        _____

E-mail Address        _____

## COMPLAINT

Plaintiff, Takisha Brooks ("Plaintiff"). Bring's this complaint against the Regional Transportation Commission (Defendant 1or RTC), Transdev Services Inc. (Defendant 2 or Transdev) and the Equal Employment Opportunity Commission (Defendant 3 or EEOC).

## PARTIES

Plaintiff Takisha Brooks. a/k/a Ms. Brooks, 2671 Stone creeks Dr, Atwater Ca 95301. Ms. Brooks is a former employee of Transdev Service Inc and Keolis Transit America Inc.

Defendant Keolis Transit America Inc. a/k/a Keolis, 6053 W. Century Blvd 9th Fl Las Angeles, Ca 90045. Keolis was previously contracted by the Regional Transportation Commission to operate the transit in Las Vegas, Nevada.

## JURISDICTION AND VENUE

This court has jurisdiction over this matter, as the matter exceeds $75,000 exclusive of interests and costs and is between citizens of different states.

This court has personal jurisdiction over the Defendants because they transact business within the state.

Venue is proper in this court because a substantial part of the factual allegations in this complaint occurred in this district.

## EMPLOYMENT BACKGROUND

Plaintiff Takisha Brooks began working for Keolis Transit America on March 14, 2022.
Ms. Brooks became an employee of Transdev Services Inc. on May 1, 2023.
Ms. Brooks worked in California up until February 2021.

Defendant Keolis Transit America Inc. a/k/a Keolis, 6053 W. Century Blvd 9th Fl Las Angeles, Ca 90045. Keolis was previously contracted by the Regional Transportation Commission to operate the transit in Las Vegas, Nevada.

## INTRODUCTION

The Regional Transportation Commission has cultivated a toxic workplace environment with strategies of harassment to force voluntary / Involuntary termination. The expectation of its contracted companies is to engage in collusion with other government agencies and businesses, manufacturing events and the falsifying document.

Since January 2023 – Present, the plaintiff has been subjected to aggressive monitoring, emotional manipulation, financial, electronic, geographical, vehicular, and physical harassment. In Las Vegas, Nv, multiple cities in California and Portland, Oregon.

A substantial portion of the harassment has been to overstimulate, overwhelm, and to distract the plaintiff from the factual allegation outlined in this complaint.

More importantly, not because of any wrongdoing by the plaintiff, but to keep their deceptive business practices from becoming public through any kind of litigation.

In this compliant, The plaintiff will give a detailed description of her experiences with hostile work environment, Intimidation tactics, several form of harassment and the systematic breakdown of her mental health via emotional manipulation the plaintiff has been subjected to since January 2023, to try and bully her into submission.

## BACKGROUND

### Toxic Fume Incident:

In July of 2022 Keolis Transit America (aka Keolis) was instructed to manufacture a "toxic fume" incident in the first attempt at a constructive discharge to force the plaintiff into a voluntary termination.

On July 21, 2022, while letting passengers off her bus on the 109 Maryland Parkway route, A guy approaches the plaintiff to report he had "just seen another passenger light some foil and smoke Meth on the bus."

The plaintiff thanked the passenger for letting her know and initiated the appropriate protocol.

The plaintiff secured the bus, opened all doors and sent a message to the BOC to call her ASAP.

The BOC called back. The plaintiff informed them of the situation, The plaintiff was then asked to wait, and they were going to send security and a supervisor.

The plaintiff grabbed her cell phone, step off the bus to also report the incident to the dispatch supervisor.

When the plaintiff got out of her seat to exit the bus to call dispatch, she looked down the aisle, and the guy who reported the incident in the first left row.

After speaking with dispatch, the plaintiff asked all the passengers to exit the bus, stating the that the bus was having "mechanical issue". The plaintiff was waiting for a supervisor to instruct her on how or if she should actually tell the passengers what happened.

Marks Security arrived. The plaintiff explains the situation, pointing out the guy who reported the incident. Security went over and spoke with the guy, the security guard returned informing the plaintiff the guy did not feel safe talking with them because the person smoking the meth was still there.

The Supervisor finally arrived. The plaintiff explains the incident to the supervisor, both decided the plaintiff would drive the supervisor car back to the yard and he would drive the bus back to the yard.

There was no incident report taking at the scene.

Once the plaintiff returned to the yard, The plaintiff informed the dispatch supervisor on duty "she could have inhale toxic fumes and she did not feel safe to drive the bus and asked to go home."

The plaintiff let the supervisor know she would call Melissa (Driver Manager) to let her know what happened.

As the plaintiff was leaving the building, it was still bothering her that there wasn't any incident report taking at the scene. The plaintiff then called David (Senior member of the Safety, Security & Training team). She informed him of the incident, and she needed to know what the protocol was.

David asked, "Did they fill out an incident report?" Plaintiff "No, was they supposed to do that?" David "Yes your supervisor is supposed to fill out a C-1 form, they are suppose to send you to Concentra for drug testing and you are supposed to fill out a worker injury form." David "Because what if a customer complained later, they could blame you cause no incident report was filed".

At 8:09pm, The plaintiff texted Melissa (Driver Manager), informing her of the incident, she could not finish her shift, and could she give her a call when she got a chance.

Melissa called, the plaintiff asked Melissa, "could she get a drug test, she just wanted to make sure she didn't inhale anything". Melissa said, "these things happen, the plaintiff would get paid for the rest of her shift (Keolis refused to pay for whole shift) and she would email with Leilani (Interim Director of Safety, Security & Training) to inquire about the plaintiff request."

On July 22, 2022, The Plaintiff woke up with a headache, she called dispatch to get Leilani direct number. Leilani did not answer.

At 10:50pm The plaintiff texted Irwin (Driver Manager). She gave Irwin a brief description of the incident and that she had woken up with and headache.

The plaintiff asked Irwin, "Can you help me with this?" or "Point me in the right direction?"

Irwin replied, "Yes I got you".

At 12:03pm the plaintiff arrived for her shift and texted Irwin to let him know she was in the building.

30mins later Irwin approached the plaintiff asking, "How can I help you?"

The plaintiff replied, "I would like an incident form, a worker injury form and a drug test please".

Irwin returned without the forms, letting the plaintiff know the Leilani wanted to meet with her regarding her request. In the meeting the plaintiff was asked to explain what happened the previous day on her shift.

The plaintiff response:

    a) A detail account of the "toxic fume" incident
    b) The witness brings the incident to her attention
    c) What happened when security arrived
    d) What happened when the supervisor arrived
    e) What happened when she return to the yard
    f) The conversation she had with David about protocol
    g) The conversation she had with Melissa

Leilani Response:

    a) Was there an incident report filled out at the scene? Did you sign anything?
    b) I spoke with Melissa last night; she didn't mention this incident.
    c) I must now pull the video to see what happened because there could be liability with the other passengers
    d) You have (30) days to file this worker injury form, "If you file it, I will fight it!"
    e) We will not send you drug testing because you could have other things in your system, and that would be setting you up to fail, because that means termination"
    f) But if you want to make sure you can do home drug testing on your own
    g) Leilani started naming different drug tests and their prices
    h) What will you do about your headache?

The plaintiff very confused replied: "I guess I will take some Motrin".

After the meeting the plaintiff decided, even if they weren't going to send her for drug testing, she still was going to fill out an incident report and a worker injury form, since that was the protocol and in case there were any question of liability in the future.

The plaintiff let Irwin know her shift was starting and she had not finished filling out her paperwork. Irwin replied, "Can you turn in the forms tomorrow?" The plain replied, "Yes".

On July 23,2022, at 12:10pm the plaintiff turns in the incident and worker injury forms to Latoya (Supervisor). Latoya stamped the form and gave the plaintiff a copy.

That following Tuesday the plaintiff made and inquire about the forms at the dispatch area and could get a straight answer.

**(Exhibits 1-6B)**


**Hard Stop Incident**

With the first attempt at voluntary constructive discharge (Toxic Fume Incident) unsuccessful and the plaintiff continuing to inquire about the paperwork and the proper protocol, Keolis was instructed to go forward with a second involuntary constructive discharge. Manufacturing another event, this time to terminate for cause.

On July 27, 2022, as the plaintiff was leaving the Decatur stop, a passenger engaged the plaintiff into a conversation. Which lasted through the next stop (Jones) and continued as the plaintiff was approaching the rainbow intersection.

The light at the rainbow intersection had just turned red. There were (2) cars in the far-left lane, (1) cars in the middle lane and (2) cars in the far-right land (closest to the bus lane).

As the plaintiff approached the rainbow she stopped talking, there was car going south on rainbow that caught her attention. The car suddenly crosses the lanes from the far-right lane into the left turning lane to catch the left turning light.

The passenger engaged the plaintiff in conversation again. The plaintiff did not answer the passenger's back; she was watching the car turn left from rainbow.

The car turned left on to Sahara and immediately got into another left turning lane and made a U-turn, went the through the traffic stopped at the red light and went straight into the bus lane.

The plaintiff was still approaching Rainbow. The car enters the bus lane in front of the plaintiff bus and immediately braked.

The plaintiff had no choice but to step on her brake, creating the first hard stop. Since no accident occurred, the car braked a second time, causing a second hard stop. This time a passenger fell from there sit.

The plaintiff followed protocol and asked the passenger if they were alright. They replied "Yes". She then asked the guy "Are you alright?" "Do you need Medical attention?" he replied, "Yes and No".

The plaintiff continued through the rainbow light and pulled into the bus stop. The plaintiff then called the called the BOC, informed them of what happened, she was told to wait for a supervisor and to let the passengers know they were sending another bus to finish the route.

The supervisor came out, the plaintiff explained what happened. As the conversation went on, the supervisor received a phone call. The caller wanted to know:

a)  Was there an accident?
b)  Was there an injury requiring medical attention?
c)  Was the plaintiff at fault?

And then the caller asked the supervisor what happened.

The supervisor answered the caller question, assuring them it was not the plaintiff fault. The supervisor was then told to let the plaintiff finish route.

The plaintiff was then told she needed to fill out an incident report when she returned to the yard. The plaintiff then asked the supervisor "I thought we were supposed to fill out the incident report at the time of the incident?" the supervisor replied, "No when you get back to the yard".

On the way back down Sahara the plaintiff notices the guy who had just fallen during the second hard stop, now standing at the bus stop at the opposite side of the street. Still feeling uneasy about not filling out a incident report at the time of the incident, the plaintiff secured the bus, exited the vehicle and got the guys contact information to add to the incident report later.

When the plaintiff arrived at the yard, she texted Daivd. David entered the breakroom asking, "What Happened?".

Instead of answering David, the plaintiff grabbed a piece of paper and drew a diagram of what happened and she explained what happened.

The plaintiff asked David, "How should I write up the incident report?" David replied, "You don't have to write too many details just let them watch the cameras".

The plaintiff replied, "I did get the guys contact information, should a add it to the report?"

David replied, "No you don't want them to have to investigate that, it could cause liability for the company."

The plaintiff filled incident as best as she could, on the advice of David, turn in the incident report to the dispatch supervisor John and went home.

With the second constructive discharge attempt unsuccessful, Over the course of the following three weeks the plaintiff's work environment became increasingly hostile. Evey person she tried to interact with either passive aggressive or would ignore her altogether.

Unfortunately, the hostile work environment did not force voluntary exit from the company, instead it forced the plaintiff into requesting ADA accommodation leave request.

**(Exhibit 7)**

**ADA Accommodation Leave Request (1st)**

On August 19, 2022, the plaintiff emailed her request for ADA accommodation leave and the doctors supporting documentation to her Driver Manager Melissa Sosa.

On August 20, 2022, the plaintiff received a call from Elin Fehr (HR Manager Keolis). Ms. Fehr acknowledged she received the plaintiff's accommodation request, Keolis had approved her request and Keolis was allotting up to (6) months on this request.

On August 24, 2022, Elin emailed the official ADA reasonable accommodation approval letter from Keolis. The company was also requiring (30) day update on the plaintiff progress.

During the plaintiff's ADA accommodation leave she only communicated with Ein Fehr, Natalie Velechovsky (HR Keolis) and Roy Lovett.

On September 17, 2022, during a phone conversion with Roy Lovett, the plaintiff mentioned she was considering filing a charge of discrimination with the EEOC. The details of that phone conversation were shared was Keolis management.

Roy Lovett was then tasked to gather personal information (Password to my email), information regarding any follow through with the EEOC and to deflect any realization of company liability the plaintiff might have regarding the "Toxic Fume" and "Hard Stop" incidents.

At the time, the plaintiff's email (tkbrooks0225@gmail.com) and its password accessed:

a)  Apple ID
b)  Gmail
c)  iCloud
d)  Banking Information
e)  Loan Information
f)  Rental Information

More importantly, it gave the defendants (1 & 2) access to the first set of session notes with her therapist Dr. Matthew Christie that had been emailed to the plaintiff.

The session notes contained the plaintiff complete mental history, any family mental and any traumatic (in detail) thing the plaintiff had experienced from child through adulthood.

Most importantly, these session notes would be later used in the future, to structure the type of harassment needed for a rapid systematic emotional breakdown when the plaintiff returned back to work after her ADA accommodation leave.

Mr. Lovett was later promoted as compensation for his compliance during the plaintiff ADA accommodation leave.

On October 31, 2022, a complaint was mailed to the Las Vegas EEOC office. The EEOC then shared the details of that complaint with defendant (1).

On or around November 21, 2022, the plaintiff received a phone call from an EEOC employee. She was calling to schedule a phone interview for April 7, 2023.

# FACTUAL ALLEGATIONS

## Medication Review

On September 17, 2022, Keolis and Defendant (1) were made aware of the plaintiff's mood stabilizer Lamotrigine a/k/a Limital.

On November 28, 2022, the plaintiff submitted her final ADA accommodation leave extension request to Elin. Within that request Dr. Christie clariid that the plaintiff was on a (30) day observation to confirm her re-stabilization.

On December 12, 2022, the plaintiff emailed her medical documentation to Natalie (HR Keolis), clearing her to return to work.

On January 5, 2023, the plaintiff received a phone call from Elin (HR Keolis). Informing the plaintiff that Keolis was requiring her to meet with a DOT doctor for a "Medication Review" at Concentra Medical Clinic. The plaintiff agreed, asking for the request in writing.

Within the written request, a passage from the plaintiff medical documentation was quoted. The letter gave the impression that Dr. Christie was suggesting the "Medication Review" and not Keolis.

On January 6, 2023, the plaintiff had a meeting with Elin Fehr and Leilani Tunei. The plaintiff wanted to confirm that the appointment was just a short medication review, because they had a appointment she could not reschedule.

Elin and Leilani confirmed it was just a "Medication Review".

The plaintiff arrived at Concentra Medical Clinic. While checking in the plaintiff was told she not there for a "Medication Review". The Concentra employee told the plaintiff they had knowledge of any medical review, and the plaintiff was there for a Return to Work physical and it could take up to (2) hours.

Confused, the plaintiff called Elin, no answer. Emailed Elin, no reply. The plaintiff returned to Keolis, reminding Elin of her appointment and informed her she would return to Concentra the following day January 7, 2023.

Still confused and now slightly concerned about the timing and Keolis sense of urgency regarding this "Medication Review". The plaintiff realized that Keolis had not requested clarification on what the plaintiff was taking the Lamotrigine for. Lamotrigine can be used as mood stabilizer; however, it can also be used to treat seizer. Keolis and defendant (1) were attempting to use Concentra to terminate her employment for cause.

The Department of Transportation is clear you cannot have a seizer condition and drive a commercial vehicle.

The Plaintiff put in an emergency call to Dr. Christie. Requesting a letter of clarity regarding her medication.

On January 7, 2023, the plaintiff returned to Concentra with her paperwork. The DOT doctor conducting her exam was Dr. Raya Zamnan.

Dr. Zamnan entered the room, introduced herself, then walked toward the paperwork on the counter. Without looking at the paperwork she turns to the plaintiff and started to say "Your medication is a seizure medication, and you can't…" The plaintiff interrupts her "can you actually read the documentation I've provided from my doctor?"

Dr. Zomnan read the documents, proceeded with the physical and there was no other mention of the plaintiff medication during the rest of the exam.

In the middle of the examination Dr. Zomnan abruptly excused herself from the room. When she returned, she informed the plaintiff that she would not be receiving the standard (2) year Medical Certification, instead she would only be issuing her a (1) year medical certificate.

The plaintiff was now cleared by Dr. Christie and Dr. Zomnan. Confirming she was mentally and physically ready to ready to return to work.

Information from the plaintiff's medical certificate paperwork, Keolis would later be instructed to weaponize to increase the pressure of the hostile work environment after the plaintiff returns to work.


**Safety Issue**

With the third attempt at a constructive discharge "Medical Review" unsuccessful, Keolis acknowledging the plaintiff disability, approving the ADA accommodation leave request and (3) extension and confirmation from Dr. Christie and Dr. Zomnan that the plaintiff was restabilized and physically ready to return to work.

Defendants (1) & (2) no longer had a legitimate hardship to use in any possible future Interactive process conversations.

Defendant (1) then instructed Defendant (2) and Keolis to manufacture a hardship.

### *Keolis's Part*

On January 21, 2023, the plaintiff work. Dommica was the trainer assigned to take the plaintiff through her (6) day refresher retraining.

At the end of each training day the refresher paperwork is supposed to be filled out, signed by the trainee and left in the dispatch area for the allotted time of the training. However, on the first night of training, Dommica insisted the plaintiff "sign the blank refresher paperwork and she would just fill it out before she went.

The plaintiff was then instructed to go home. The next day when the plaintiff went to retrieve the paperwork it was not there. When Dommica came into the breakroom she the plaintiff "Do you have the refresher paperwork?" the plaintiff replied "No" Dommica suggested we just start a new one.

This event triggered the plaintiff *anxiety*, because Keolis was establishing they were still not going to follow proper protocol and they now had a blank document with the plaintiff signature on it.

On the plaintiff's second day back to work, Keolis made sure that everyone listed in her EEOC complaint was in the breakroom when she arrived. This event maintains plaintiff levels of *anxiety* and triggers a small amount of *paranoia* by creating *doubt* in the confidentiality of the plaintiff EEOC Complaint.

The *reaction abuse* started on January 28, 2023. As the plaintiff was walking to her car, she noticed Danielle (Driver Manager) standing by a car parked behind the plaintiffs. As the plaintiff was putting her things in car, Danielle cleared her throat, getting the plaintiff's attention. The plaintiff looked her direction and said goodnight. Danielle did not speak back she just continued to watch the plaintiff load her car and drive away.

Throughout the first two weeks of the plaintiff return to work. She was only allowed to see everyone she interacted before her ADA accommodation leave once.

Throughout the next two months Keolis intentionally and consistently surrounded the plaintiff with co-worker she was unfamiliar with.

Effectively forcing the plaintiff into an indirect *ostracization*.

Throughout February 2023 the hostile work environment persistent through:

a) Gaslighting
b) Passive- Aggressive Verbiage
c) Ostracizing
d) Reaction Abuse
e) Whisper Campaigns

The hostile work environment was not just limited to the sunset yard. Keolis was instructed to position its S.S.T (Safety Security & Training) team members along the plaintiff routes. Intentionally causing *distractions*, causing the plaintiff to make small mistakes.

The Driver Manager was instructed to start overly spot checks the plaintiff; The plaintiff had a constant feeling that she was doing wrong while driving on her routes. Maintaining her levels of *anxiety* and *Paranoia.*

On February 10, 2023, the plaintiff confided to Dr Christie, that she believed Keolis leaked information from her medical certification paperwork, regarding her being trafficked from age 11-14 yrs to start a whisper campaign among her co-workers.

With the consistent *overstimulation* and *manipulation of emotions* from the hostile work environment, the plaintiff *mental state started deteriorating rapidly*.

On March 1, 2023, the plaintiff filed an HR complaint (via email.) with Elin Fehr. The complaint explains that the plaintiff believed confidential information from her medical certification paperwork was leaked to her co-workers.

Elin invited the plaintiff to meet in person to talk about the complaint.

With Keolis investigation policy stating, "the employee filing the compliant can be suspended pending investigation" and the previous (3) events of trying to terminate her employment, the plaintiff thought it best to communicate via email and decline the in-person meeting.

Instead, the plaintiff reassured Elin that she would trust that Keolis would investigate her complaint thoroughly and update her of the status of the compliant via email.

In retaliation for not accepting the in-person meeting, Keolis was instructed to use the complaint as an opportunity at further emotional manipulation. Keolis increase the male presents around the plaintiff going forward.

On March 17, 2023, the plaintiff emailed Elin for an update on the investigation. Elin did not respond to the email.

With consistent overstimulation and emotional manipulation from the hostile work environment and the weaponization of the information from the medical certification paperwork; It accelerated the deuteration of the plaintiff mental state and on March 23, 2023, the plaintiff requested a second ADA accommodation leave.

They now had a blank document with the plaintiff signature on it, mistakes made throughout her (2) months back, a request for a mental health day, (1) miss out and the plaintiff was completely overwhelmed and overstimulated and needed to request a second ADA accommodation leave.

The results of this hostile work environment would later coincide with Transdev "Interactive Dialogue" paperwork.


### *April-June 2023*

On April 7, 2023, Saul Vazquez (EEOC Investigator) conducted a phone interview with the plaintiff for a charge of discrimination against Keolis Transit America Inc.

Once the interview was completed, Mr. Vazques informed the plaintiff she qualified for "early mediation" and she (30) days to accept or decline.

On April 10, 2023, the plaintiff received an email from Mr. Vazquez, instructing her to read over the charge, make any corrections needed, email it back and update them and officially file it.

However, the charge was shared with defendant (1) and Keolis. Mr. Vazques was instructed not to make any of the changes the plaintiff made and file it as is. The original charge was written in favor of Keolis. Assuring that the charge would be thrown out if it made it to litigation.

The charge was filed on April 10, 2023.

Throughout April 2023, Defendant (1) instructed Keolis to have its S.S.T team to begin the financial harassment and aggressive monitoring, to force the plaintiff into EEOC mediation and a settlement.

On April 27, 2023, the plaintiff received a text message from her co-worker Marc Covella.

Mr. Covella "Are you still on leave?" "I don't know if you know what's going on at Keolis?"

Mr. Covella informed the plaintiff that Transdev had been conducting the on-boarding process since April 18, 2023, and it was the last day of the process. *(Exhibit 8)*

Transdev had been conducting the onboarding process for (9) days without Keolis or any representative from Transdev reaching out to the plaintiff.

The plaintiff called Natalie (HR Keolis) to find out why she hadn't been informed of the onboarding process, Natalie response "Transdev is handling that!"

If the plaintiff had missed that onboarding process, Transdev would have cause to terminate her employment.

The plaintiff got to the onboarding process within 30 minutes of her call with Natalie. As the plaintiff was signing in, she noticed there were only 5-6 slots unsigned including hers. *(Exhibit 9 & 10)*

Prior to the plaintiff taking her second ADA accommodation leave, Keolis and Transdev were instructed not to post any information regarding the upcoming onboarding process.

The plaintiff finished her onboarding process, received her new hire paperwork and was signed up for orientation on June 8, 2023.

With the plaintiff making it through the on boarding process, Transdev was instructed to revise their ADA Accommodation request policy in their employee handbook. Adding a safety paragraph, that would later coincide with Keolis hostile work environment results and their "Interactive Dialogue" paperwork.

On May 1, 2023, the plaintiff officially became an employee of Transdev Services Inc., However defendants (1) & (2) instructed Keolis to continue to have Elin Fehr (HR Keolis) communicate with the plaintiff, to give the false impression the plaintiff was still employed with Keolis.

Also on May 1, 2023, Due to the unwavering aggressive monitoring and financial harassment she was experiencing during her accommodation leave. The plaintiff declined EEOC mediation, she believed at the time an EEOC investigation would be a better option.

On May 9, 2023, the plaintiff emailed Elin (HR Keolis), requesting contact information for Transdev Human Resources. Elin response "I have no knowledge of any contact information Transdev Human Resources".

On May 16, 2023, the plaintiff emailed a request for an ADA accommodation leave extension and on May 18, 2023, Elin was instructed to approve the plaintiff request.

On May 26, 2023, The EEOC requested a position statement from Keolis regarding the charge of discrimination file by the plaintiff.

On May 26, 2023, Littler (Keolis Attorneys) submitted their position statement to the EEOC.

On May 31, 2023, the plaintiff received an email from the EEOC, acknowledging her request for a copy of the position statement submitted by Keolis.

The email stated:

"Before we provide the position statement and attachments to you, the EEOC investigator reviews the documents to ensure they do not contain protected and/or confidential information."

On June 8, 2023, Transdev held the new hire orientation. The plaintiff received a newly revised employee handbook.

On June 9, 2023, the plaintiff emailed Transdev corporate human resources regarding ADP (new payroll system), uniforms and badges, because she could not get a straight answer from Elin.

The plaintiff was informed that she had not been entered into system yet, in spite becoming an employee May 1, 2023.

On June 16, 2023, the plaintiff emailed her ADA accommodation leave extension request to Elin.

On June 17, 2023, Elin was instructed to reply with an attached letter from Keolis. The letter stated that Keolis would only be able to approve the ADA accommodation leave extension until June 30, 2023.

The plaintiff responded to Elin, communicating that she believed Keolis and Transdev were intentionally giving me misinformation, stalling to run out the clock on her current ADA accommodation leave, so she could not start any ADA process with Transdev in a timely manner.

On June 18, 2023, Elin was instructed to reply to the plaintiff, making sure Keolis was absolved from the situation and continuing to mislead the plaintiff.

Elin:

"Ms. Brooks,

Per my communication yesterday Keolis is accommodating your continued leave until June 30, 2023. Keolis is not affiliated with Transdev. Any information you have submitted to Keolis will not be transferred to Transdev. You will need to speak to Transdev directly regarding employment opportunities and leave requests. As previously communicated, Keolis does not have the information on who you should be speaking with within Transdev.

However, as you were informed in prior communication, Transdev representatives on site they might be able to guide you to whom to speak with." *(Exhibit 11)*

The Plaintiff response:

"Elin,

No worries, I'm sure everything will be sorted out when I arrive for my shift on July 1, 2023."

Keolis, part of the manufactured hardship was now complete.

Defendants (1) & (2) concerned with the plaintiff willingness to return to work July 1, 2023. Aislinn Edwards was instructed to reach out via email. Introducing herself as the Human Resource manager for Transdev Las Vegas area.

During June 18, 2023, email exchange Ms. Edwards wanted to set up a phone meeting, emphasizing it to be over the phone not in person.

Aislinn explained that Transdev wanted to fully "Understand what the plaintiff limitation were according to the essential functions of her job."

Aislinn also pointed out that "If the plaintiff is currently approved for a leave from your current employer Keolis. We can not approve anything officially until after July 1, 2023."

With Ms. Edwards reiterating that the plaintiff was still an employee of Keolis until July 1, 2023, the plaintiff agreed to circle back regarding her ADA accommodation leave extension request.

Within that same email the plaintiff clarified her Diagnosis (Bipolar II), More Importantly, with Transdev mentioning "limitation" the plaintiff felt compeled to explain her restabilization timeline. *(Exhibit 12)*

"Aislinn,

If someone had prior knowledge of my diagnosis, then uses that information to intentionally trigger the symptoms the timeframe would be longer."

Transdev was later instructed to weaponize the above information to drastically slow down and prolong the plaintiff restabilization process.

### *Transdev's Part*

With Transdev not be able to provide the plaintiff with a legitimate hardship. Transdev was then instructed to revise their ADA accommodation leave request policy in April 2023, adding a "safety" paragraph. This policy update correlated with the Keolis hostile work environment results and the "Interactive Dialogue" questions later presented to the plaintiff.

On July 5, 2023, the plaintiff received a call from Aislinn Edwards (Transdev HR). During the call Ms. Edwards informed the plaintiff that she would be asking her some questions orally, then she would be emailing a document with the same questions for the plaintiff to fill out, sign and email it back to Ms. Edwards.

The Questions:

1. Do you have a disability that may impair your ability to do your job?
2. Would this impairment substantially limit any major life activity?

3.  If so, which major life activity or activities are limited?
4.  Please explain to me the duration or expected duration of this impairment?
5.  Which job function are you unable to perform and why not? (This question was not asked during the phone call. It was already filled in by Transdev)
6.  Please describe any reasonable accommodation that would allow you to be able to perform those job functions.
7.  Would performing any of the job functions result in a direct safety or health threat to you (co-workers, the general public, etc)?

Question 5, Elin Fehr and Aislinn Edwards kept reiterating that the plaintiff leaves information did not transfer from one company to another, however question (5) answer clearly did.

When the plaintiff started reading the forms sent by Aislinn, it was clear that Transdev was acknowledging the plaintiff's disability. However, the documents did not address an ADA accommodation leave request. The documents were referencing the safety paragraph laid out in the newly revised ADA accommodation request guidelines. *(Exhibit 13 & 13a)*

Transdev had been instructed to create a hardship document, to give them a legal reason to terminate the plaintiff.

Once the plaintiff realized the correlation between Transdev revised ADA accommodation request policy and the "Interactive Dialogue" form, she respectfully decline to sign the forms.

Ms. Edwards then told the plaintiff "A hardship cannot be established without the "Interactive Dialogue' form.

Once defendants (1) & (2) realized they were losing momentum with the manufactured hardship the companies needed for legal termination. Ms. Edwards was instructed to send an email, intending to intimidate and manipulate the plaintiff into signing the documents.

"Ms. Brooks,

Please note, as of July 5, 2023, you are not on approved leave. All the information you submitted was for medical leave, not personal.

I highly suggest you submit a personal leave request, so I can get it approved in operation. Have a good evening."

The plaintiff was forced into filling out a personal leave request form. *(Exhibit 14 & 14a)*

On July 7, 2023, the plaintiff emailed Ms. Edwards requesting a status update on her personal leave request.

The plaintiff let Ms. Edwards know there was a family emergency with her son. She would be taking him to California, and she needed to know the timeline for returning to work or if her personal leave was approved.

On July 9, 2023, the plaintiff received an email from Ms. Edwards with an attached letter from Transdev. The letter stated that her personal leave request was denied by Lorraine Lopez (Division Manager) due to operational needs. *(Exhibit 15)*

However, the company was offering the plaintiff unrequested bereavement leave up to (5) days, beginning on July 7, 2023. *(Exhibit 15a)*

The plaintiff was also instructed to reach out to Vanessa McCall (Safety Manager) via email to arrange the plaintiffs retraining upon her return Thursday July 13, 2023.

On July 12, 2023, the plaintiff received a voicemail from Hilary Lunn (Transdev HR Manager). Ms. Lunn was calling the plaintiff to find out why she had not shown up for her last (5) scheduled shifts. Starting on July 7, 2023, and she needed the plaintiff to call her back immediately. *(Exhibit 16)*

Confused, the plaintiff returns Hilary's call. Hillary started by saying "Ms. Brooks it looks like you were scheduled for the last (5) days and you haven't shown up for your shifts".

Very confused, the plaintiff replied, "I'm sorry there's been some mistake, I was told I was on a bereavement leave, and I haven't worked for the company yet, I've been on an ADA accommodation leave." "Wait! Are you telling me Transdev put me on the schedule to fire me for job abandonment?"

Hilary: "Was Quiet"

The plaintiff: "The lady said I was on a bereavement leave; I'm in California.

Hilary: "What lady?"

The plaintiff: "Aislinn its spelled A.i.s.l.i.n.n"

Hilary realizing what happen said: "I was just calling to get verification for your bereavement leave, so you can get paid.

The plaintiff: "I don't need to get paid".

Hilary: "I will follow up with an email."

Transdev was instructed to manipulate the scheduling system. Scheduling the plaintiff from July 7, 2023 – July 11, 2023. Concealing that fact with the plaintiff offering her bereavement days to terminate her employment for job abandonment.

Concerned about the phone call the plaintiff received from Ms. Lunn, she decided to check the ADP payroll system. The plaintiff discovered her actual hire date was May 1, 2023, not July 1, 2023.

To distract from the deceptive business practices the plaintiff had been subjected too.

On July 17, 2023, the position statement in response to charge of discrimination filed against Keolis, was made available for the plaintiff's review.

The EEOC accepted the position statement, had it in review for 2 ½ months with no attempt to follow up with Keolis to make sure it was submitted for the right person. *(Exhibit 17)*

As the plaintiff reviewed the position statement, she notices Keolis tried to conceal the plaintiff's identity by submitting the document with the incorrect name. They also made up a false employment history, exaggerating the length of time she actual worked for the company.

Confused and concerned, the plaintiff emailed Parsonna Russell, the investigator for the charge. Informing Ms. Russell that the person that Keolis was referring to on the Position statement was not her.

On July 18, 2023, Ms. Russell replied: "Thank you for your email. A supervisor will make contact with your employer , regarding this issue."

Within the same email the plaintiff was informed that she had (30) days (with a 4 days extension) to respond to the position statement with any supporting documentation.

On July 20, 2023, Aislinn Edwards was instructed to email the plaintiff, to try to mitigate the liability to the company with the manipulation of the scheduling system by approving a (1) month personal leave. However, the company continued to push the "Interactive Dialogue" documents. *(Exhibit 18)*

On August 22, 2023, the plaintiff finished uploading her supporting documentation to the EEOC portal. The EEOC then shared that information with the defendants. *(Exhibit 19)*

Within 24 hours, On August 23, 2023, Transdev approved the plaintiff ADA accommodation leave request without the "Interactive Dialogue" paperwork. *(Exhibit 19a)*

On September 13, 2023, the plaintiff submitted ADA accommodation leave extension request.

On September 19, 2023, Transdev approved the ADA extension request.

On October 10, 2023, the plaintiff scheduled a (via email) video call consultation with Attorney Karen Winters regarding the EEOC charge of discrimination for Keolis. *(Exhibit 20)*

On October 11, 2023, the plaintiff sent an email to Parsonna Russell to get a status update on the charge filed against Keolis.

As a direct result of the plaintiff scheduling that consultation with Attorney Karen Winters, The EEOC instructed Parsonna Russell to email the following automated message:

"Good Afternoon,

Thank you for your email. The charge is in queue pending the assignment of an investigator. There is no action required from you at this time. Any changes in status will be updated within the public portal.

Thank you" *(Exhibit 21)*

On October 12, 2023, the plaintiff had a consultation with Attorney Karen Winters, A retainer was due to Ms. Winters on November 1, 2023.

On October 13, 2023, Transdev was instructed to cut off all communication with the plaintiff.

Clear, the plaintiff was moving forward with legal action with the charge of discrimination for Keolis, On November 8, 2023, Christine Park-Gonzalez, District Director with the EEOC Las Vegas branch was instructed to transfer the plaintiff charge of discrimination to the Honolulu office.

Concealing the transfer decision as "Workload Redistribution". *(Exhibit 22)*

Transdev's S.S.T team in Stanislaus County in California, where the plaintiff was restabilizing was instructed to increase all manners of harassment.

With no response to the plaintiff monthly ADA request through December 13, 2023. The plaintiff files a charge of Discrimination against Transdev with the EEOC Las Vegas office.

On January 8, 2024, the plaintiff had a phone interview with EEOC Cherry Desture. Throughout the interview Ms. Desture spent most of the interview trying to convince the plaintiff to resign from Transdev.

The charge of discrimination was written up in favor of the employer again. In fact, the verbiage of the charge, If the plaintiff decided to take legal action, Keolis would have been void of any liability as well.

In spite of the plaintiff saying multiple times during the phone interview that Keolis loss the bid/contract to Transdev, Ms. Desture wrote "Transdev bought out Keolis". Giving the impression they were one company.

The charge of discrimination against Transdev was filed on January 8, 2024.

On January 23, 2024, the plaintiff received a phone call from Jose Medina, investigator at the EEOC Las Vegas office.

Mr. Medina asked the plaintiff if she would be interested in mediation with Transdev. With all the harassment the plaintiff was experiencing, she declined mediation.

The plaintiff asked Mr. Medina had Transdev been notified that a charge had been filed against them. Mr. Medina replied, "When I call the lady said it was the wrong number".

On January 24, 2024, the plaintiff emailed Mr. Medina the contact information for Transdev. Mr. Medina did not reply.

With the plaintiff continuing to inquire about the status of the charge of discrimination filed against Transdev and failed attempts at forcing the plaintiff to resign through harassment.

Saulo Cornel, investigator with the EEOC Honolulu office was instructed to move forward with the next steps of the charge of discrimination filed against Keolis Transit.

On February 21, 2024, the plaintiff had a phone interview with Saulo Corniel with the EEOC Honolulu office.

Mr. Corniel was only interested in the plaintiff diagnosis.

He did not ask any questions about what was actually written in the charge, the workplace harassment which led the plaintiff to file the charge, false statements made regarding the timeline of events, and exaggerated employment history.

Mr. Corniel continued to ask about the plaintiff diagnosis, The plaintiff interrupted him.

"Why are you asking me about my diagnosis? Everything you need to investigate the charge I submitted to the portal." Mr. Corniel started to say "Keolis is saying… Never mind about what they are saying let's just focus on you".

He attempted to continue the diagnosis question, and the plaintiff interrupted again,

"Do you know how much harassment I've been going through waiting for the EEOC to do their job… Everything you need to investigate are in the supporting documentation I've already submitted."

With the plaintiff mentioning the harassment in the interview Mr. Corniel abruptly ended the interview.

On February 23, 2024, Transdev was instructed to attempt the deposit of a final paycheck into an close account only available in the Keolis payroll system.

On February 27, 2024, the plaintiff received a "Denial of a Request for reconsideration" for the Keolis charge of discrimination and On March 1, 2024, Transdev was instructed to attempt for a second time the deposit of a final paycheck into a close account only available in the Keolis payroll system.

Transdev was continuing the threat of termination.

Needing a break from the constant harassment, the plaintiff booked a flight to Portland, Oregon to visit her friend Kirsten Huckfeldt.

Trimet, who contracts Transdev to operate there paratransit in Portland was informed that the plaintiff would be coming to Portland for 3 weeks.

On July 8, 2024, an EEOC right to sue request was typed up on a Trimet laptop. Trimet share that information with defendant (2).

On July 9, 2024, the plaintiff was walking to the gate to catch her flight back to California, the plaintiff googled Michael Mendoza (Director of EEOC Las vegas Office) email and emailed the right to sue request.

Mr. Mendoza was waiting for the plaintiff email, because he replied with approval within 5-10mins.

The plaintiff had (90) days to file a lawsuit.

Within the next (3) months the S.S.T team in Merced County, California was instructed to increase all manners of harassment.

On October 9, 2024, the right to sue expired without the plaintiff filing a lawsuit.

On October 17, 2024, Defendant (2) instructed Hilary Lunn (Transdev HR) to reach out to the plaintiff via letter:

"Dear Takisha,

The last day you worked at Transdev was on 7/01/23. Your absence at this time has not been authorized and we have not had any communication with you; I must assume that you have abandoned your position.

Therefore, you will be Terminated from your position due to job abandonment, effective 10/25/24. If there are mitigating circumstances which explain your absence, you must contact me via email directly no later than 10/24/24 to explain.

Sincerely,

Hilary Lunn" *(Exhibit 23)*

On October 19, 2024, the plaintiff replied to the letter, addressing each false statement made, pointing out that the companies attempt at yet another manufacture job abandonment scenario. *(Exhibit 23a)*

Transdev did not reply to the plaintiff email.

With no response from Transdev, the plaintiff had no idea if the company terminated her employment or not.

On December 13, 2024, $100 (Not the correct amount owed) was deposited into an account by Transdev. *(Exhibit 24)*

# HARASSMENT

## Introduction

"Systematic Breakdown using Emotional manipulation… Why does it work?

Answer: It uses the victim's natural human reaction against them. Making the target appear like the problem, while the true manipulators remain hidden."

Beginning in January 2023- March 2023 a hostile work environment was created by Keolis to force the plaintiff into a second ADA accommodation leave, Giving the impression that the plaintiff wasn't competent and it wasn't safe for her to do her job and to force the plaintiff in voluntary termination.

April 2023 – June 2023 Financial harassment and aggressive monitoring began to maintain the emotional manipulation created by a hostile work environment and to force the plaintiff into EEOC mediation and to force the plaintiff in voluntary termination.

July 2023 – September 2023 Financial harassment and aggressive monitoring was in retaliation for the failed attempt at manufacturing the hardship, getting caught manipulating the scheduling system and for the supporting documentation turned into the EEOC for a Discrimination charge against Keolis and to force the plaintiff in voluntary termination.

October 2023 – January 2024 Silent treatment, threat of termination, financial harassment and aggressive monitoring was in retaliation for the plaintiff contacting an Attorney and to force the plaintiff in voluntary termination.

February 2024 – October 16, 2024, Financial harassment and aggressive monitoring was in retaliation for the plaintiff for filing an EEOC charge filed against Transdev and to force the plaintiff in voluntary termination.

October 17, 2024 – Present, Financial harassment and aggressive monitoring is in retaliation because the plaintiff missed the EEOC right to sue deadline, her response to a letter finally sent by Transdev and to keep the plaintiff consistently overstimulate and distracted from the factual allegation in this complaint.

These are the forms of harassment the plaintiff has been subjected to from January 2023 – Present:

### *Threat of Termination*

October 13, 2023 – October 16, 2023, the defendants retaliated against the plaintiff uses the threat of termination. Using silence to induce a constant feeling of anxiety.

Transdev cease all communication with the plaintiff after the plaintiff spoke with Attorney Karen Winters in October 2023.

The plaintiff would email her ADA request on the 13th of each month to no response from Transdev. *(Exhibit 23a)*

The only way the plaintiff knew she was still employed with the company; she would log into the payroll system and check her employment status.

On February 23, 2024, After a second interview with the EEOC regarding a charge of discrimination against Keolis. Transdev tried to deposit a final paycheck in a closed bank account that was only available in Keolis payroll system.

On March 1, 2024, Transdev tried to deposit the same check again into same close account only available in the Keolis payroll system, after the plaintiff received "Notice of Closure" for the Keolis EEOC charge of discrimination.

### *Financial*

Since April 2023, the plaintiff has been subjected to unwavering financial harassment by Transdev. Transdev was instructed to use time and distance to drastically slow the plaintiff income.

### Uber

The pattern used is as follows:

     a) Eliminated all short rides
     b) Only allowing long rides
     c) Ride ending in area where there no rides back to the starting point
     d) Enlisting the help of other S.S.T teams to order rides throughout Las Vegas, Bay Area, Stanislaus County and Merced County

### Instacart

On January 24, 2025, the plaintiff received an email from Las Vegas district court, regarding a lawsuit filed against Keolis Transit in July 2024. Within the next two weeks the plaintiff received an email from Instacart stating the plaintiff's last (40) orders all received complaints of missing, damaged and slow deliveries.

The previous year the plaintiff did have a single complaint.

The pattern used for Instacart is as follows:

     a) Use of time and distance

b) Use of complaints to try and get the account deactivated
c) Use of complaints to lower the plaintiff status, so she can see orders first
d) Saturating the market around the plaintiff to lower her wage to extend time working to induce sleep deprivation

All the plaintiff time and payroll sheet reflect these patterns.

# CAUSE OF ACTION

**Action (1) Civil Conspiracy – All Defendants**

The plaintiff repeats and realleges each and every allegations in all of the preceding paragraphs as if fully set forth herein.

The plaintiff is the victim of civil conspiracy and is entitled to bring a civil action against the defendants. RTC instructed Transdev and Keolis to manufacture a hardship for Transdev to use in an interactive process, to deny the plaintiff ADA Reasonable Accommodation Leave Request.

The companies worked with the EEOC; to make sure that the companies could not be held liable for any future litigation.

As a direct result of the Defendants conduct as alleged in this complaint. The plaintiff has suffered physical harm, severe emotional distress, anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm, and other consequential damages.

**Action (2) Negligence – All Defendants**

The plaintiff repeats and realleges each and every allegations in all of the preceding paragraphs as if fully set forth herein.

The plaintiff is the victim of negligence and is entitled to bring a civil action against the defendants.

Defendants (1 & 2) perpetrated negligence by sharing the plaintiff diagnosis, creating hostile work environment based on that diagnosis, working with Defendant (3) to stall and undermined EEOC investigation. Defendants (3) perpetrated negligence by intentionally not following proper protocol at the request of defendants (1 & 2).

As a direct result of the Defendants conduct as alleged in this complaint. The plaintiff has suffered physical harm, severe emotional distress, anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm, and other consequential damages.

**Action (3) Negligence Affliction of Emotional Distress – Defendants (1 & 2)**

The plaintiff repeats and realleges each and every allegations in all of the preceding paragraphs as if fully set forth herein.

The plaintiff is the victim of negligent affliction of emotional distress and is entitled to bring a civil action against defendants (1 & 2).

Defendants (1 & 2) perpetrated the negligent affliction of emotional distress, by using the details of the plaintiff mental history to intentionally triggering the symptoms of her diagnosis to constantly overstimulate, overwhelm, manipulate her emotion to stall her re stabilization process.

As a direct result of the Defendants conduct as alleged in this complaint. The plaintiff has suffered physical harm, severe emotional distress, anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm, and other consequential damages.

**Action (4) Intentional affliction of Mental Anguish – Defendants (1 & 2)**

The plaintiff repeats and realleges each and every allegations in all of the preceding paragraphs as if fully set forth herein.

The plaintiff is the victim of Intentional affliction of mental anguish and is entitled to bring a civil action against defendants (1 & 2).

The plaintiff is the victim of intentional affliction of mental anguish; Defendants (1 & 2) targeted specific symptoms to of the plaintiff diagnosis; Sleep deprivation, emotional manipulation, nervous system overstimulation to harass the plaintiff into submission.

As a direct result of the Defendants conduct as alleged in this complaint. The plaintiff has suffered physical harm, severe emotional distress, anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm, and other consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays judgement be entered in her favor against Keolis Transit America Inc for each specific cause of action raised in this complaint.

Plaintiff respectfully requests a judgement in her favor against the defendants for:

A) For a money judgment representing compensatory damages in the amount of $100,000,000; including general damages and hedonic damages, lost wages, earning and all other sums of money, together with interest amount, according to proof;

B) For a money judgement for mental pain and anguish and severe emotional distress, according to proof;

C) Punitive damages according to proof; to be determined at trial.

D) Reasonable and necessary future Attorneys' fees.

E) Reasonable and necessary cost of the suit.

F) Prejudgment and post-judgment interest at the highest lawful rates

G) For such other and further relief as the court deems just and appropriate.

8:39

4

**M**

Melissa(Driver Manager )

Evening Melissa can you please give me a call I wasn't able to finish my shift today because I didn't feel like it was safe for me to continue driving because I was exposed to crack fumes Yep someone was smoking crack on my bus yikes please call me.....

Oh no...ok give me a few minutes

Exhibit 1



| 8:55 | | |
|---|---|---|
| ‹ | Account | 🛒 🔍 |
| 07/21/2022 | 02:47PM | 📞 516 |
| 07/21/2022 | 04:09PM | 📞 725 |
| 07/21/2022 | 05:36PM | 📞 702 |
| 07/21/2022 | 05:57PM | 📞 725 |
| 07/21/2022 | 06:31PM | 📞 702 |
| 07/21/2022 | 06:37PM | 📞 725 |
| 07/21/2022 | 06:57PM | 📞 725 |
| 07/21/2022 | 07:48PM | 📞 702 |
| 07/21/2022 | 07:55PM | 📞 510 |
| 07/21/2022 | 08:33PM | 📞 702.290.3661 |
| 07/21/2022 | 09:08PM | 📞 702 |
| 07/22/2022 | 12:05AM | 📞 702 |
| 07/22/2022 | 07:27AM | 📞 928 |
| 07/22/2022 | 09:09AM | 📞 702 |
| 07/22/2022 | 09:16AM | 📞 702 |
| 07/22/2022 | 09:27AM | 📞 702 |
| 07/22/2022 | 10:18AM | 📞 702 |
| 07/22/2022 | 02:23PM | 📞 725 |
| 07/22/2022 | 05:29PM | 📞 702 |
| 07/23/2022 | 01:01AM | 📞 510 |
| 07/23/2022 | 01:05AM | 📞 702 |
| 07/23/2022 | 11:25AM | 📞 725 |
| 07/23/2022 | 02:21PM | 📞 725.8 |
| 07/23/2022 | 05:45PM | 📞 702.3 |
| 07/24/2022 | 12:00AM | 📞 702 |
| 07/24/2022 | 02:44AM | 📞 510 |
| | 02:48AM | 📞 510 |
| 07/24/2022 | 02:51AM | 📞 702 |
| 07/24/2022 | 09:48AM | 📞 928 |

Shop    Support    More

**Exhibit 2**



| Date | Time | Number |
|---|---|---|
| 07/18/2022 | 05:24PM | 702 ████ |
| 07/19/2022 | 07:19AM | 702 ████ |
| 07/20/2022 | 10:00PM | 510 ████ |
| 07/21/2022 | 02:05AM | 725 ████ |
| 07/21/2022 | 02:31AM | 510 ████ |
| 07/21/2022 | 02:47PM | 510 ████ |
| 07/21/2022 | 04:09PM | 725.8 ████ |
| 07/21/2022 | 05:36PM | 702 ████ |
| 07/21/2022 | 05:57PM | 725 ████ |
| 07/21/2022 | 06:31PM | 702 ████ |
| 07/21/2022 | 06:37PM | 725 ████ |
| 07/21/2022 | 06:57PM | 725 ████ |
| 07/21/2022 | 07:48PM | 702 ████ |
| 07/21/2022 | 07:55PM | 510 ████ |
| 07/21/2022 | 08:33PM | 702 ████ |
| 07/21/2022 | 09:08PM | 702 ████ |
| 07/22/2022 | 12:05AM | 702.2 ████ |
| 07/22/2022 | 07:27AM | 928 ████ |
| 07/22/2022 | 09:09AM | 702.851.2618 |
| 07/22/2022 | 09:16AM | 702.851.2600 |
| 07/22/2022 | 09:27AM | 702 ████ |
| 07/22/2022 | 10:18AM | 702.851.2618 |
| 07/22/2022 | 02:23PM | 725 ████ |

**Exhibit 3**

Page 1 of 2



8:50

**D**

Driver Mange

Hey.... This is work related
My driver manager is off
today... Can I speak to you
when I get in?

I want to fill out a C-1 form and
go to Drug testing. My DM said
she was going to email Laylani
but I haven't heard from her
this morning....

Yesterday someone was
smoking crack(Yup CRACK) on
my bus on the 109....

I'm almost positive I'm
overthinking n paranoid but I
went to bed with this headache
and have woken up with it too...
Is not bad enough for me not to
work, I definitely can work but I
just wanna make sure.....

Can you help me with this? Or
point me in the right direction?

Yes i got you

Exhibit 4 A

Page 2 of.



8:50

**D**

Driver Mango

she was going to email Laylani but I haven't heard from her this morning....

Yesterday someone was smoking crack(Yup CRACK) on my bus on the 109....

I'm almost positive I'm overthinking n paranoid but I went to bed with this headache and have woken up with it too... Is not bad enough for me not to work, I definitely can work but I just wanna make sure.....

Can you help me with this? Or point me in the right direction?

Yes I got you

Appreciate U

See u soon

Hey I'm in the building

Exhibit 4 b

Page 1 of 2



This requires management signature.... Are you working today? Or should I ask another manager?

Hi there ...I'm working today but at a job fare till 1

Ok

Exhibit 5a

Page 2 of 2

9:05

M

Melissa(Driver Manager)

This requires management signature.... Are you working today? Or should I ask another manager?

Hi there ...I'm working today but at a job fare till 1

Ok

I'm on show today I will just leave the forms at dispatch for you and if you can just leave me copies of the sign ones....

I will get them when I'm off tonight

Ok sounds good



Exhibit 5b

Exhibit 6A

# KEOLIS

## OPERATOR / EMPLOYEE INCIDENT REPORT

This form is to be completed for employees who wish to report an incident. If you have a concern or experience a problem that affects you or your co-workers, we ask that you complete this form and submit it to your supervisor for follow-up and resolution.

| Today's Date: 7/22/22 Time: 12:57 | Vehicle # | Route # 109 |
|---|---|---|

Employee reporting incident: Takisha Brooks

Please check one: ☐ Vehicle accident ☐ Passenger Incident/Injury ☒ Workplace Incident ☐ Incident Other

Location of Incident: Charleston / Maryland Parkway          Date & Time of incident: 7/21/22 17:31

Describe Incident below: (Please complete a separate report form for each passenger affected by the incident)

Picked up passenger at BTC 17:23. Arrival at Charleston & Maryland Pkwy 17:31. Pick up passengers (I had smelled something weird but disregarded it) A boy came to the driver box (with mask) and started trying to tell me that a guy was smoking crack in the back of bus. I didn't understand what he was saying first because of the mask & Drive Glass. He repeated what he said I finally understood. → See Other Side

Witnesses to the Incident ☒ Yes ☐ No If, yes provide information below – use additional pages if necessary

☐ Keolis employee ☒ Keolis Passenger ☐ Bystander ☐ Passenger in other vehicle ☐ Other

Witness Name: N/A

Address:

| City: | State: | Zip: |
|---|---|---|

| Telephone: | Cell: | E-mail: |
|---|---|---|

Other witness information:

Did witness provide a statement? ☒ Yes ☐ No If yes, to whom? Marks Security

In your opinion, was this incident in violation of a Company policy? Yes ☒ No ☐

If yes, specify which policy and how the violation that resulted in incident:

No Drugs Use on Bus

[stamp: JUL 23 12:10]

Takisha Brooks
Printed Name of Employee Submitting Report

Signature

6/23/22
Date Signed

## "NOTICE OF INJURY OR OCCUPATIONAL DISEASE"
(Incident Report)
Pursuant to NRS 616C.015

Name of Employer __Keolis__

| Name of Employee | Social Security Number | Telephone Number |
|---|---|---|
| _akisha Brooks_ | | _610 559 9041_ |

| Date of Accident (if applicable) | Time of Accident (if applicable) | Place where accident occurred (if applicable) |
|---|---|---|
| _7/21/22_ | _17:31_ | _Charleston & Maryland_ |

| What is the nature of the injury or occupational disease? | List any body parts involved: |
|---|---|
| _cpose to toxic fumes (Crack Cocaine)_ | _Lungs_ |

Briefly describe accident or circumstances of occupational disease:
Note: if you are claiming an occupational disease, indicate the date on which employee first became aware of connection between condition and employment

_Passenger was smoking ~~Crack~~ +B Crack Cocaine of bus ~~while it~~ while I was driving it._

Names of witnesses: _Ref to Marks Security_

| Did the employee leave work because of the injury or occupational disease? | X YES __ NO | If yes, when (date and time)? _7/21/22 6:30_ | Has the employee returned to work? | X YES __ NO | If yes, when (date and time)? _7/22/22 13:25_ |
|---|---|---|---|---|---|
| Was first aid provided? | __ YES X NO | If yes, by whom? | Name and address of treating physician, if applicable or known | | _+B_ |
| Did the accident happen in the normal course of work? (if applicable). | X YES __ NO | | | | |
| Was anyone else involved? | X YES __ NO | Names of others involved | _Passenger on Bus_ | | |

EMPLOYER/INSURER MAY HAVE MADE ARRANGEMENTS TO DIRECT ME TO A HEALTH CARE PROVIDER FOR MEDICAL TREATMENT OF MY INDUSTRIAL INJURY OR OCCUPATIONAL DISEASE. I HAVE BEEN NOTIFIED OF THESE ARRANGEMENTS.

| Supervisor's Signature | Date | Signature of Injured or Disabled Employee | Date _7/03/22_ |
|---|---|---|---|

FILE A CLAIM FOR COMPENSATION, SEE REVERSE SIDE, SECTION ENTITLED, CLAIM FOR COMPENSATION (FORM C-4).

For assistance with Workers' Compensation Issues you may contact the Office of the Governor Consumer Health Assistance Toll Free: 1-888-333-1597 Web Site: http://govcha.state.nv.us Email: cha@govcha.state.nv.us

Employee should sign, date and retain a copy.
Original to Employer, Copy to Employee

_Exhibit 6B_

Case 2:26-cv-01449-APG-MDC    Document 1    Filed 05/12/26    Page 42 of 68



No-fault Hard Stop

Arville Street

Island

Hard Stop Car

Sahara Bus

Sahara Bus

Exhibit 7

Lane 3          Lane 2          Lane 1

Hey T, I'm so sorry I haven't checked in with you. Are you back? Do you know about what's going on with the new company?

Hey no worries... no I'm back...

What going on?

I wasn't sure if you knew about having to apply and all of the other hassle. I of course waited till the last moment lol

Of course they haven't told me

Are you serious? You were supposed to have been given an onboarding packet



*Orientation*

#116

# LAS VEGAS RTC INCUMBENT TRAINING

## ALL CURRENT MV / KEOLIS EMPLOYEES THAT WILL BE WORKING FOR TRANSDEV AT THE LAS VEGAS RTC CONTRACT WILL BE REQUIRED TO COMPLETE INCUMBENT TRAINING

**CLASS BEGINS:**

DATE: _6-8-2023  MON_

TIME: _0600 – 1430_

### TRAINING SESSIONS WILL BE CONDUCTED AT THE FOLLOWING LOCATION:

**SMF**
**5165 W. SUNSET RD**
**LAS VEGAS, NV**
**89118**

**IBMF**
**3210 CITIZEN AVE**
**N. LAS VEGAS, NV**
**89032**

*SHOULD YOU HAVE ANY QUESTIONS PLEASE CALL*
*JENNIFER MCKIBBINS (702) 498-1964*

*Exhibit 9*



*Onboarding Process*

**transdev**
the mobility company

**UNION**

Date: 4/27/23

Employee Name: Takisha Brooks

Congratulations! Transdev Services, Inc. is pleased to make you this offer of employment for the position of **Bus Driver**. This position is contingent upon the successful completion of your pre-employment testing, background screening, and other conditions set forth below.

**Terms of Employment**          *Official Start Date*

**Hire Date:** Your anticipated start date will be May 1, 2023.

**Compensation:** Your wage will be $ **18.50** USD paid on a biweekly basis subject to all applicable payroll and tax withholdings. Your performance and base salary will be defined in your Collective Bargaining Agreement (CBA).

**Benefits:** Your position qualifies you for various benefits in accordance with Transdev's policies and benefits plans. Typically, these benefits include medical, dental, vision, life insurance, and a 401(k) plan.

Unless otherwise specified in the CBA, you will be eligible to enroll into various benefits plans which are effective the first of the month following 30 days of hire. The enrollment window to elect coverage will open within one week of your start date, and a notice will be mailed to you. Benefit information is available on the Transdev Benefits Portal. If you do not enroll during this timeframe, you must wait until Annual Enrollment, or experience a qualifying life event. Incumbent employees of the current service providers are eligible for coverage on the first day of service, and a special enrollment opportunity will be offered. Watch for additional information on this enrollment window.

Benefits are subject to terms and conditions dependent on the location, as well as any union contract (or CBA) that may be in place. For more information regarding your eligibility, please contact your location manager or your human resources representative. Benefit plans are modified on an annual basis at the discretion of Transdev Services, Inc.

**Paid Time Off:** Information regarding your paid time off and additional compensated days for sick leave, company or Client observed holidays, etc. will be provided to you under separate cover during your on-boarding.

**Company Proprietary Information Not Known to the Public:** In consideration of the offer being made here, you agree to maintain in strict confidence regarding confidential or proprietary information that becomes known to you as a result of your participation in your employment with Transdev Services, Inc., specifically concerning all confidential information that may become known to you, including, without limitation, Transdev's trade secrets, business plans and operations, known-how, pricing strategies, and the like, which information is not generally available to the public or the trade, is of a special and unique value, is created by the Company, gives or may give the Company a competitive business advantage, is designated by the Company, understood or reasonably assumed to be confidential by the Company, or that otherwise could reasonably be perceived to be confidential or proprietary. Any breach of this promise by you will likely cause irreparable damage to Transdev for which there is no adequate remedy at law, and, therefore, in such event, in addition to any other remedies available at law or in equity, you agree that Transdev would be entitled to specific performance and injunctive relief, both preliminary and permanent, enjoining or restraining such breach, without any requirement of posting

*Exhibit 10*

*Transdev Services, Inc. is an Equal Opportunity Employer*



**Elin Fehr**  Jun 18, 2023
to me ⌄

Hi Ms. Brooks -

Per my communication yesterday, Keolis is accommodating your continued request for leave throug 6/30/23.

Keolis lost the contract to operate the service in Las Vegas and will end all operations after 6/30/2:

Keolis is not affiliated with Transdev. Any information you have submitted to Keolis will not be shar or transferred to Transdev. Your personnel record will not be shared/transferred. You will need to speak with Transdev directly regarding employment opportunities and leave requests.

As previously communicated, Keolis does not have the information on who you should be speaking with within Transdev. However, as you have been informed in prior communication, Transdev has representatives on site and they might be able to guide you to whom to speak with.

I have no objections to meeting with you but please understand Keolis is not involved with the hirin and/or employment process for Transdev.

Please let me know when you would like to meet.

Elin
Sent from my iPhone


(Exhibit 11)

**me**  Jun 19, 2023

to Aislinn ⌄

Aislinn,

Sounds good, let's circle back next week. My next Doctor appointment 6/30/23. I will forward another progress report after.

Also please allow me clarify my disability(Bipolar 2). It's just a chemical imbalance managed with Meds & Therapy. Their are no limitation when I am completely stabilized. Which is why it's protected under the ADA.

The re-stabilization timeframe can vary. It just depend on the trigger.

Death, Career Change, Divorce timeframe is usually not that long.

Now "Hypothetically" If someone has full knowledge of the disability and then uses that information to weaponized the disability to intentionally trigger the symptoms "hypothetically"

The timeframe could be quite a bit longer....

So again I appreciate the introduction and I'm looking forward to working with Transdev when I return to work.

Respectfully,

Takisha Brooks

Exhibit 2

Case 2:26-cv-01449-APG-MDC    Document 1    Filed 05/12/26    Page 48 of 68

## Interactive Dialogue – T Brooks

**PURPOSE:** The purpose of this interactive dialogue today is to identify the precise limitations resulting from your disability and potential reasonable accommodations that could overcome those limitations. This dialogue is a critical in the ADA process and essential to accomplishing our goal. It is the key mechanism for facilitating the integration of disabled employees into the workplace

| | |
|---|---|
| Do you have a disability that may impair your ability to do your job? | Yes, only when symptoms are triggered |
| Would this impairment substantially limit any major life activity? | ▣ Yes ☐ No |
| If so, which major life activity or activities are limited? | Depending on how many symptoms are triggered and how long they last |
| Please explain to me the duration or expected duration of this impairment | Beginning Date                Ending Date |
| | Unknown based on treatment |
| Which job function are you unable to perform and why not? | Safely operating a passenger bus |
| Please describe any reasonable accommodation that would allow you to be able to perform those job functions | To be extended for excused absences until July 30, 2023 |
| Would performing any of the job functions result in a direct safety or health threat to you (co-workers, the general public, etc)? | NO |

If medical leave is one of the possible accommodations, please have your physician estimate the duration of leave that you require below.
Time required:

| Physician: | Date | Physician's Signature |
|---|---|---|

| Check One | Leave W O Pay | Paid (PTO, etc ) | Partial Salary | Pay Period of Leave | Begin Date June 1, 2023 | Return Date December 1, 2023 |
|---|---|---|---|---|---|---|
| | ▣ | ☐ | ☐ | | | |

**Certification.** You must use all accrued leave time available to you (unless stipulated otherwise under a collective bargaining agreement). A leave of absence for a medical condition may be covered under the Family and Medical Leave Act or ADA, and must be accompanied by a doctor's statement detailing the nature of the illness and estimated date of disability. *Please Note:* [illegible] Accepting other employment while on leave may result in the termination of employment with Transdev North America Inc. Your return to work is subject to employment conditions existing at the time of your return. If you are unable to return by the original date given, you must notify your supervisor in writing within five (5) business days of the scheduled date to request an extension. *Please Note:* [illegible] approved. [illegible] During your absence understand that although you may continue to receive any group health coverage depending on the reason for the request, through Transdev North America Inc. it is your responsibility to make premium payments to avoid lapses withdrawal of arrears once you return. Understand that a separate letter will be sent to inform you of what your premium costs are and procedures for sending in your payroll deducted payments.

| Employee Signature | | Date Signed |
|---|---|---|
| Accommodation Request Status | ☐ Request Approved    ☐ Request Not Approved (see below) | |
| Reason for Disapproval | Payroll  Date Entered | |
| Supervisor's Signature | Date Signed    HR Signature | Date Signed |

**Privacy Act Statement:** Section 5 U.S. Code [illegible] authorizes collection of this information. The primary use of the information is for management and accounting [illegible] office to approve and record your use of leave. Additional disclosures of this information may be: To the Department of Labor where processing a claim for compensation regarding a job connected injury or illness, to a State unemployment compensation office regarding a claim, to Federal Life Insurance or Health benefit carrier regarding a claim, to a Federal, State or local law enforcement agency when Transdev becomes aware of a violation or possible violation of civil or criminal law, to a Federal agency when conducting an investigation for employment or security reasons, to the Office of Personnel Management or the General Accounting when the information is required for evaluation of leave.

Exhibit 13

It is the policy of Transdev to comply with all federal, state and local laws concerning the employment of persons with disabilities. The Company will not discriminate against qualified individuals with disabilities regarding application procedures, hiring, advancement, discharge, compensation, training, or other terms, conditions, and privileges of employment.

Consistent with the Act, the Company will provide a reasonable accommodation to a qualified individual who is an employee or job applicant who can perform the essential functions of the job, with or without an accommodation. Under the Act, the employee or an applicant to whom a conditional offer of employment has been made, must make known to the Company his or her need for a reasonable accommodation and cooperate with the Company in the interactive process. During the interactive process, Transdev will identify the potential range of accommodations that will enable the individual to perform the essential functions of his or her job and whether the accommodation requested is available and reasonable.

All employees are required to comply with safety standards designed to protect the employee and public and, in certain situations, to conform to the law. The Act permits employers to establish qualification standards that will exclude individuals who pose a direct threat -- a significant risk of substantial harm -- to the health or safety of the individual or of others, if that risk cannot be eliminated or reduced below the level of a direct threat by reasonable accommodation. Applicants who pose a direct threat or significant risk of substantial harm to the health or safety of themselves or other individuals in the workplace, which risk cannot be eliminated by reasonable accommodation, will not be hired for the applicable job. Current employees who pose a direct threat or risk of substantial harm to the health of safety of themselves or the other individuals in the workplace, which risk cannot be eliminated by reasonable accommodation, will be placed on appropriate leave or moved into another job position if available, until an organizational decision has been made regarding the employee's longer term employment situation and whether a further reasonable accommodation is possible. The Human Resources and Legal Departments should be consulted in such circumstances.

Any individual with a need for a reasonable accommodation should contact a Human Resources representative within the Company. Questions surrounding this policy, including the resolution of a reasonable accommodation request, safety-related issue, or undue hardship imposed on the Company should be addressed with the respective Regional Human Resources Director and the Legal Department.

For more information, please contact your local or Corporate Human Resources representative.

## Probationary Status

Depending on the property location, employees may begin their employment in probationary status. Probationary periods vary by location and are typically 30, 60 or 90 days in duration. Operators are typically evaluated at 30, 60 or 90 days after the beginning of their employment, receive an annual on-board evaluation each year thereafter and, when necessary, diagnostic evaluations. Successful completion of the probationary period does not alter the at-will nature of the employee's employment.

34
*Transdev Employee Handbook – revised April 2023*

**Edwards, Aislinn**  Jul 5, 2023

to me  ^

:) ↩ ⋯

om   Edwards, Aislinn   Aislinn.Edwards@transdev.com

TK Brooks   tkbrooks0225@gmail.com

ate   Jul 5, 2023 at 6:46 PM

Standard encryption (TLS)

Learn more

ease note, as of today July 5, 2023, you are not on approved leave. All the information you bmitted was for medical leave, not personal. I highly suggest you submit a request, so I can proved in operations. Have a good evening.

AU

,

Aislinn

Exhibit 14

## transdev
MOBILITY INSPIRED BY ADC

# REQUEST FOR LEAVE OF ABSENCE

**INSTRUCTIONS:** Read the vacation, personal leave, and sick leave provisions in the appropriate Employee Handbook or Collective Bargaining Agreement before completing this form. To request a leave, complete sections A, B, C, and D. Submit the completed from to your supervisor for review and signature. Submit completed and signed form, EAP, and attachment to local Human Resources Manager for review.

### A. EMPLOYEE

| FIRST NAME | LAST NAME | HIRE DATE |
|---|---|---|
| Tarisha | Brooks | 07/01/2023 |

| JOB TITLE | DEPARTMENT | EMPLOYEE PHONE NUMBER |
|---|---|---|
| Driver | | 520-599-9041 |

| CURRENT ADDRESS | (City) | (State) | (Zip) |
|---|---|---|---|
| 7350 W Centennial Parkway 2131 Las Vegas, NV 89131 | | | |

### B. TYPE OF LEAVE – ☐ Relevant Documentation Attached ☐ EAP Brochure Given ☐ FMLA Source Handout Given

| ☐ Extended Illness | ☒ Personal (Complete Section D) | ☐ Military or Other (Complete Section D) |
|---|---|---|

| C. LEAVE PERIOD DATES: | Begins: 07/6/23 | Ends: 08/06/23 |
|---|---|---|

| Check Yes or No: | Coordinate Leave benefits with State Disability benefits ☐ Yes ☒ No | Use Sick and Vacation benefits during leave to care for a family member. ☐ Yes ☐ No |
|---|---|---|

### D. REMARKS – Reason (e.g., FMLA/CFRA not available or 15 days approved pending FMLA Source notice).

Personal Leave instead of ADA Leave

**Certification:** You must first use all accrued leave time available to you (unless stipulated otherwise under a collective bargaining agreement). A leave of absence for a medical condition may be covered under the Family and Medical Leave Act and must be accompanied by a doctor's medical certification for the serious medical condition and estimated date of disability. *Please Note: A written clearance from your doctor must be presented to both your supervisor and Human Resources prior to returning to work. You will not be able to work unless this information is received.* Accepting other employment while on leave may result in the termination of employment with Transdev Services, Inc. Your return to work is subject to employment conditions existing at the time of your return. Understand that after thirty (30) days of leave, your position may be filled and may result in your termination unless another position that fits your qualifications is available. If you are unable to return by the original date given, you must notify your supervisor in writing within five (5) business days of the original date to request an extension. *Please Note: The extension letter must include new dates of leave, reason for extension, and a new doctor's statement (if applicable). Failure to return or obtain an approved extension will be considered job abandonment and may result in immediate termination.* During your absence understand that although you may continue receiving group health coverage (depending on the reason for the request) through Transdev Services, Inc. it is your responsibility to make premium payments to avoid lump sum withdrawals of arrears once you return. Understand that a separate letter will be sent to inform you of what your premium costs and procedures for sending in non payroll deducted payments.

| Employee Signature | Date Signed |
|---|---|
| [signature] | 7/6/2023 |

☐ APPROVED    ☐ DISAPPROVED (if disapproved, see below)

**Reason for Disapproval:**

| Supervisor Signature | Date Signed |
|---|---|
| | |

Privacy Act Statement: Section 6311 of Title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your H.R. office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when Veolia becomes aware of a violation or a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management. Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment of title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If Transdev uses the information furnished on this form for purposes other than indicated above, it may provide you with an additional statement reflecting those purposes.

Revision 4/2016

(Exhibit 14)



MOBILITY INSPIRED BY YOU

| | |
|---|---|
| **Date:** | July 9, 2023 |
| **To:** | Takisha Brooks |
| **From:** | Aislinn Edwards, Human Resources |
| **Cc:** | Lorraine Lopez, Division Manager |
| **Subject:** | Request for personal Leave & Bereavement |

Hello Takisha,

On July 6, 2023, you submit your request in writing requesting approval for personal leave lasting from July 6, 2023 to August 6, 2023. I submitted your 30-day leave request to Lorraine Lopez, Division Manager. Lorraine could not grant your personal leave request because of operational needs.

On Friday July 7, 2023, you shared that there was a death in your family, and you will need to travel out of town. Lorraine will accommodate your bereavement request, since you are traveling to the state of California. You are approved for bereavement up to five days beginning Sunday, July 7, 2023. Per section 10.14 of the Collective Bargaining Agreement (CBA) stating the following.

*"An employee may be granted three (3) paid bereavement days in the event of the death of a member of their immediate family. For those employees needing to travel five hundred (500) miles or more one way, an additional two (2) paid bereavement days will be granted. (Normal days off are excluded.) For purposes of this section, immediate family shall be defined as spouse (including Domestic Partner), mother, father, legal guardian, stepparent, foster parent, brother, sister, child, stepchild, foster child, current mother-in-law, or current father-in-law, grandparent/spouse grandparent, grandchild, current spouse of child. Additional days of unpaid bereavement leave will upon request, be granted provided that the request is made at either the commencement of or during the paid bereavement leave and the additional days directly follow the paid bereavement leave."*

Please make sure you reach out to Vanessa McCall, Safety Manager to arrange for retraining upon your return Thursday, July 13, 2023. You can reach her by email at vanessa.mccall@transdev.com

Your signature on this memo signifies you have read and will comply.

Date: _____

Name: _____

Signature: _____

Exhibit 15

Transdev North America Inc



## ·sonal Leave? / ER  Inbox

 me  Jul 7, 2023
to Aislinn, bcc: me ⌄                                                            ☺  ↩

inn,

 had a family ER. Theirs been a death on my sons father side and I will be taking him to Californ
day.

ould like to know ASAP if my leave was approved or not. It will determine if I have to drop him c
California or If I can stay awhile and support him through it.

preciate it,

isha Brooks

-Did not request Berevement

Exhibit 15A

## Voicemail

+1 (725) 777-1131          7/13/23

Unknown          7/13/23

+1 (858) 299-6258          7/13/23

### Hilary(Transdev)
phone
July 12, 2023 at 4:15 PM

0:00          -0:42

  

### Transcription

"Hi this message is for Takisha Brooks _____ my name is _____ I'm calling from _____ I'm calling because you have not been to work in Alaska last five schedule days um and I'm calling to check to find out what is going on um it is imperative that you call me as soon as possible you can reach me at 725-237-0075 and my extension is 116 him or you can reach me on our cell phone which is 702-249-1189 him again I need to speak with you as

    66

Favorites    Recents    Contacts    Keypad    Voicemail

# Littler

Littler Mendelson, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225

Cody S. Chapple
559.244.7530 direct
559.244.7500 main
559.860.0187 fax
cchapple@littler.com

May 26, 2023

VIA EEOC RESPONDENT PORTAL

Parsonna Russell
U.S. Equal Employment Opportunity Commission
Las Vegas Local Office
333 Las Vegas Blvd South, Suite 5560
Las Vegas, NV 89101
Phone: (702) 553-4470

Re:    Lakisha Brookes v. Keolis Transit America, Inc.
       EEOC Charge No.: 487-2023-00559
       **Respondent's Statement of Position**

Dear Ms. Russell:

Respondent Keolis Transit America, Inc. ("Keolis") submits this Position Statement[1] in response to Complainant Lakisha Brooks's ("Ms. Brooks") Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). After reviewing the Charge of Discrimination, Keolis categorically denies the charges contained in Complainant's filing and shows the following:

---

[1] This response is based upon Keolis's understanding of the facts at this time. Keolis in no way waives its right to present new or additional facts, arguments, or defenses based upon subsequently acquired information. This response does not constitute an affidavit, and may not be used in any manner, including as evidence or for discovery purposes, for impeachment or otherwise, in any subsequent proceeding pursuant to 42 U.S.C. § 2000e-5(b) and FRE 408, or in any administrative or judicial proceeding in connection with this Charge or any other matter. Keolis stands ready to continue to cooperate in the investigation of this matter and will timely respond to relevant requests for information in connection with your investigation through counsel.

(Exhibit 17)

littler.com

Parsonna Russell
May 26, 2023
Page 2

## I.    INTRODUCTION

Keolis categorically and unequivocally denies Claimant's allegations of unlawfully discriminating against her on the basis of a disability in violation of Title VII of the Civil Rights Act ("Title VII") and the Americans with Disabilities Act ("ADA").

Ms. Brooks is still employed and has been on an approved leave of absence since March 18, 2023. Keolis continues to engage in the interactive process and has approved every requested accommodation and extension. Ms. Brooks has worked approximately two months in the past year and has been on approved leave of absence for approximately 295 days in the past year. Clearly, Keolis has not discriminated, retaliated, or harassed Ms. Brooks and the EEOC should dismiss Ms. Brooks's charge and enter a finding of "no cause."

## II.    BACKGROUND FACTS

### A.    Keolis Transit America, Inc.

Keolis manages and operates public transportation services, serving clients throughout the United States and providing fixed-route and paratransit transportation, as well as airport, college and corporate shuttles, taxi operations and other transit-related services, such as call center management. Keolis manages and operates public transportation services in Las Vegas, Nevada.

### B.    Keolis's Relevant Policies and Procedures

Keolis believes in fostering a workplace culture and customer experience where everyone is included. To that end, Keolis is committed to providing a workplace that is free of harassment and discrimination as explained in its Harassment-Free Workplace and Non-Retaliation policies.

Keolis has a zero tolerance policy on harassment of our job applicants, contractors, passengers, vendors or employees by any employee, supervisor, vendor, customer or any third party because of the individual's race, color, national origin, religion, sex, pregnancy (including childbirth, and related medical conditions), disability, age, citizenship status, genetic information, ancestry, religious creed, religious observance, marital status, sexual orientation, gender (gender identity and gender expression) medical condition, military service, veteran status, status as a victim of domestic violence, assault or stalking or any other protected class under federal, state or local law, and that: (1) contributes to or has the effect of creating an intimidating, hostile, or offensive working environment; (2) unreasonably interferes with an individual's work performance; or (3) otherwise adversely affects an individual's employment opportunities.

Keolis complies with all relevant and applicable provisions of the Americans with Disabilities Act ("ADA") and does not discriminate against any associate on the basis of a qualifying disability, a perceived qualifying disability, a record of having a qualifying disability, or a known close relationship with an individual who has a qualifying disability. Keolis is committed to providing equal employment opportunities to qualified individuals with disabilities, including employees with disabilities, including serious or life threatening illnesses. Keolis provides reasonable accommodation where appropriate in order for an otherwise qualified individuals to perform the essential functions of the job.

littler.com

Parsonna Russell
May 26, 2023
Page 4

Ms. Brooks worked for Keolis's predecessor at the VVTA Barstow location prior to Keolis's contract. At some point during her employment, Ms. Brooks voluntarily resigned from her position as a driver.

Ms. Brooks first began working for Keolis on October 12, 2020, shortly after Keolis took over the VVTA contract. Ms. Brooks voluntarily resigned from her position on May 20, 2022. There were no issues with her resignation and Ms. Brooks worked until the end of her notice. She reapplied and was rehired on June 27, 2022.

III.    KEOLIS DID NOT DISCRIMINATE OR RETALIATE AGAINST MS. BROOKS

Ms. Brooks's claims are meritless. To establish a prima facie case for discrimination under Title VII, Ms. Brooks must show that she:

> (1) is a member of a protected class;
>
> (2) qualified for the position or performing satisfactorily;
>
> (3) experienced an adverse employment action; and
>
> (4) similarly situated individuals outside her protected class were treated more favorably.

Ballou v. McElvain, 29 F.4th 413, 422 (9th Cir. 2022).

Under the McDonnell-Douglass burden-shifting analytical framework, "[o]nce a plaintiff has established a prima facie case, the burden shifts to the defendant to 'show a legitimate, nondiscriminatory reason for the challenged actions.'" Id. "If [the defendant] is able to do so, the burden 'returns to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual.'" Id. (quoting Freyd v. Univ. of Oregon, 990 F.3d 1211, 1228 (9th Cir. 2021).

Here, Ms. Brooks has not suffered an adverse employment action whatsoever. Ms. Brooks continues to be employed by Keolis. Keolis has engaged in the interactive process with Ms. Brooks throughout her employment. Keolis promptly approved every request for leave as an accommodation. These approved leave requests resulted in Ms. Brooks spending 295 days on a leave of absence in the past year of employment.

Ms. Brooks has not suffered any adverse actions; she has not been disciplined, demoted, terminated, or harassed. Instead, the facts show that Keolis has provided extensive accommodations throughout this process. This included retraining Ms. Brooks when she returned from her first extensive leave of absence in January 2023.

Additionally, there were no complaints about harassment. Based on Ms. Brooks's allegations in her charge, the alleged harassment is not pervasive and severe to be legally actionable. Ms. Brooks, for example, alleged that she was subjected to "obvious observation" and had coworkers on her bus. Even if she was being observed, she was still in her training phase of employment. She had to be retrained when she returned from her lengthy leave of absence and will likely need to be retrained again if or when she returns from this current leave of absence.

Parsonna Russell
May 26, 2023
Page 3

Keolis further requires that no employee will be subject to, and Keolis prohibits, any form of discipline or retaliation for reporting perceived violations of this policy, pursuing any such claim, or cooperating in any way in the investigation of such claims. If an employee believes someone has violated Keolis's non-retaliation policy, the employee is informed that he or she should bring the matter to the immediate attention of the Human Resources Department directly. Anyone, regardless of position or title, who Keolis determines has engaged in conduct that violates this policy against retaliation, will be subject to discipline up to and including termination.

C.    Ms. Brooks's Employment History

Keolis hired Ms. Brooks on or around March 14, 2022, as a fixed-route driver. Ms. Brooks is an hourly non-exempt employee with an hourly rate of $17.00. On or around July 21, 2022, Ms. Brooks was driving her bus route when a passenger began smoking what she believed was crack cocaine. The police were immediately called to deal with the passenger. Later, Ms. Brooks filed a workers compensation form alleging that she sustained an on-the-job injury because she was exposed to toxic fumes. This claim expired because Ms. Brooks refused medical attention. She also requested a leave of absence for that day. Keolis immediately approved her request. She returned to work on July 22, 2022.

On August 19, 2022, Ms. Brooks provided a doctor's note stating that Ms. Brooks had unspecified bipolar disorder, which caused mood fluctuations and racing thoughts, among other things. Plaintiff filed a formal request for leave of absence as a reasonable accommodation with a return to work on September 24, 2022. Keolis approved the request, dating the leave from August 20, 2022, with a return-to-work date of September 24, 2022.

Ms. Brooks, however, did not return on September 24, 2022, and requested an extension to her leave. She provided a doctor's note recommending leave until November 30, 2022, and Keolis approved the leave of absence request. However, on November 28, 2022, Ms. Brooks requested another extension until January 2, 2023. Keolis approved this extension as well. Ms. Brooks eventually returned to work on or around January 15, 2023. In total, Ms. Brooks was on leave of absence for approximately 207 days during this time period.

On or around March 18, 2023, Ms. Brooks alleged to have suffered an injury she described as a "Disability symptoms triggered" stating that her mind and mood were changed. She left her shift without notice. On March 22, 2023, she emailed a doctor's note stating that she had bipolar disorder and did not list any specific symptoms. Her physician recommended 30 days of leave until April 21, 2023. Keolis approved the leave.

On April 20, 2023, Ms. Brooks requested another extension for a leave of absence until May 17, 2023. Keolis approved the request. On May 16, 2023, Ms. Brooks requested another extension with a return-to-work date of June 14, 2023. Keolis immediately approved the request.

Between starting work on March 14, 2022, and her requested return to work date of June 14, 2023, Ms. Brooks will have been on approved leave of absence for approximately 295 days, while having worked for approximately 4 months during this time.

littler.com

Parsonna Russell
May 26, 2023
Page 5

Clearly, Ms. Brooks was no discriminated or retaliated against and the EEOC should dismiss her charge with a finding that it is unsubstantiated.

**IV.    CONCLUSION**

As demonstrated above, Keolis did not subject Ms. Brooks to discrimination or retaliation on the basis of a disability. Accordingly, Keolis respectfully requests that the Commission dismiss this Charge in its entirety with a "no cause" finding.

Sincerely,

Cody S. Chapple
Associate

CC
4892-4181-2326.1 / 112699-1000

littler.com

Hello Takisha,

I am sorry you are having this type of experience. Transdev's HR won't try to end your employment, but we'll help you take medical leave. If you want Transdev to accommodate your request, it will require you to take part in the full process. This is required by all Transdev employees seeking approval for medical accommodations. In the meantime, I will recommend your personal leave to be approved through to August 14th, but if you seek a medical extension, you will need to take part as required. If you choose not to adhere to the requirements of your medical leave, you will again have to apply for personal leave.

Attached is the limited release of information and your job description. These documents are for your doctor to answer questions in relation to your job description. This is the last step for us to approve your request for medical leave with the possibility of an extension. If not, then I would recommend apply for FMLA, which is another form of protected leave, and you will communicate fully through FMLA source for approval. I strongly suggest you choose one of these options. If you continue to not cooperate, then the only leave we can accommodate is personal leave, and your division manager will decide to approve or not approve. Please let us know how you want to proceed

I hope you continue to make progress.

**Warm regards,**

**Aislinn Edwards**

Human Resources Manager, MPA PHR

Transdev North America, Inc.

# Upload complete Inbox



**me** Aug 22, 2023

to PARSONNA

Ms. Russell,

I finished uploading my documents.

Also can I request the part in my rebuttal statement regarding video proof of "Obvious Observation" be kept confidential from Keolis? I don't want anything to "happen" to it before you have a chance to look at it.

Please let me know if you need anything else.

Takisha Brooks

---



**PARSONNA MARIA RUSSELL** Aug 22, 2023

to me

Thank you. They do not see your information at this time.



to me

**Good morning Takisha,**

**Your accommodation request for an additional 30-day leave of absence is granted.  We will check in with you again in September to see how you are feeling and make arrangements for you to return to work.  In the meantime, be well and please let us know if you have any questions or if there are any updates on your end.**

**Warm regards,**

**Aislinn Edwards**

Human Resources Manager, MPA PHR

**Transdev North America, Inc.**

Office: (725) 237-0075 ext 103


☆



Oct 12, 2023 • 2:00 PM – 2:45 PM

# Karen Winters' Zoom Meeting

📍 https://us06web.zoom.us/j/89251219297?pwd=jb5vM1SYv2PPZgXZk4Um4XtWkb0wdU.1

👥 kwinters@nevada-law.us – Organizer

☰ Karen Winters is inviting you to a scheduled Zoom meeting.
Join Zoom Meeting
https://us06web.zoom.us/j/89251219297?pwd=jb5vM1SYv2PPZgXZk4Um4XtWkb0wdU.1...

📅 **On your Google Calendar**
**No other events on this date**



Yes      No      Maybe      Directions

**Based on this email**

Correct?  👍  👎



**K**  **kwinters** Oct 12, 2023

to me ⌄

😊  ↩  ⋯

Case 2:26-cv-01449-APG-MDC    Document 1    Filed 05/12/26    Page 64 of 68



**PARSONNA MARIA RUSSELL**  Oct 11, 2023

to me ⌄

🙂  ←

## Good afternoon,

**Thank you for your email.** The charge is in queue pending assignment to an investigator. There is no actior required from you at this time. Any changes in status will be updated within the public portal.

Thank you



Parsonna M. Russell

**Office Automation Assistant**

333 Las Vegas Blvd South, Suite 5560

Las Vegas, NV 89101

Desk: (702) 553-4469 – Fax (702)-388-5094

Email: parsonna.russell@eeoc.gov



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Las Vegas Local Office**
333 Las Vegas Blvd South, Suite 5560
Las Vegas, NV 89101
(702) 553-4470
Website: www.eeoc.gov

Takisha Brooks

Re: Takisha Brooks v. KEOLIS TRANSIT AMERICA, INC.
EEOC Charge Number: 487-2023-00559

## NOTICE OF TRANSFER OF Charge of Discrimination

This is to notify you that the above-referenced Charge of Discrimination has been transferred to the Honolulu Local Office for Workload Redistribution. Please make all future contact regarding this charge to:

Honolulu Local Office
300 Ala Moana Blvd Room 4-257
Honolulu, HI 96850
Phone: (808) 800-2350
Email: HLOACT@eeoc.gov

On Behalf of the Commission:

Digitally Signed By:Christine Park-Gonzalez
11/09/2023

Christine Park-Gonzalez
District Director

Exhibit 20



transdev
the mobility company

October 17, 2024

Takisha Brooks
1432 87th Ave.
Oakland, CA 94621

Dear Takisha:

The last day you worked at Transdev was on **7/01/2023**. Your absence at this time has not been authorized and we have not had any communication with you, I must assume that you have abandoned your position.

Therefore, you will be terminated from your position due to job abandonment, effective **10/25/2024**.

If there are mitigating circumstances which explains your absence, you must contact me via email directly no later than **10/24/2024** to explain.

Sincerely,

Hilary Lunn
Director of HR
3210 Citizen Ave.
N. Las Vegas, NV
702-672-2662

Exhibit 23

*I emailed the company on the 13th of every mo prior to this letter with no response from Transdev*

Aislinn.Edwards@transdev.com

( Label ▼ )  ( From ▼ )  ( To ▼ )  ( Attachment ▼ )  ( Date ▼ )  ( Is unread )  ( Exclude calendar updat )

**me**  10/13/
**Request for Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  9/13/
**Request for Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me, US**  8/13/
**Request for Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  7/13/
**Request for ADA Reasonable Accommodation Leave Extention**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me, Mail**  6/13/
**Request for Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  4/13/
**(no subject)**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  3/13/
**Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  2/13/
**Reasonable Accommodation Leave Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  1/13/
**Reasonable Accommodation Extension Request**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  12/13/
**Reasonable Accommodation Leave Extension Request**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

**me**  11/13,
**Reasonable Accommodation Extension**
Re: Request for Reasonable Accommodation Leave Extension. Dear HR Manager:  Inbox

Fargo Store Vision Platform

## Checking/Savings Account History

Show 10 ☑ entries                                     Search: |

|  |  | Image | Check |  |  |
|---|---|---|---|---|---|
| 12/16/2024 | Chime3_Debit Chime3Dbt 241216 takisha BROOKS TAKISHA BROOKS 2330165200 TAKISHA BROOKS R00000091004235026479N | No |  | +5.00 | 100.00 |
| 12/13/2024 | TRANSFER SERVICE DIRECT DEP 241213 7980964909042Y9 BROOKS, TAKISHA D 9111111102 7980964909042Y9 O00000091004352966756N | No |  | +100.00 | 95.06 |
| 11/29/2024 | MONTHLY SERVICE FEE | No |  | 5.00 | -4.94 |
| 11/05/2024 | Chime3_Debit Chime3Dbt 241105 takisha brooks TAKISHA BROOKS 2330165200 TAKISHA BROOKS R000000910062263738136N | No |  | +5.00 | 0.06 |
| 10/31/2024 | MONTHLY SERVICE FEE | No |  | 5.00 | -4.94 |
| 10/07/2024 | Chime3_Debit Chime3Dbt 241007 takisha brooks TAKISHA BROOKS 2330165200 TAKISHA BROOKS R00000091004033532885N | No |  | +5.00 | 0.06 |
| 09/30/2024 | MONTHLY SERVICE FEE | No |  | 5.00 | -4.94 |

Showing 1 to 7 of 7 entries                          Previous  | 1 |  Next

CLOSE

Exhibit 24